## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| BRANCH BANKING AND TRUST COMPANY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | Case No. 3:15-CV-2928-M |
| LEXIAM ENTERPRISES, LLC, CHRISTOPHER CLAASSEN, and TANZEEN CLAASSEN, | § § § § | |
| Defendants. | § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion for Summary Judgment [ECF # 18], filed by Plaintiff

Branch Banking and Trust Company ("BB&T"). Because BB&T has produced sufficient

summary judgment evidence to establish that it is entitled to judgment as a matter of law on

all its claims and causes of action, and because Defendants have not shown there is a genuine

dispute regarding any affirmative defense, BB&T's Motion is GRANTED.

### Background

The material facts in this case are not in dispute. On or about November 15, 2011,

Defendant Lexiam Enterprises, LLC obtained a business loan (the "Loan") from Citibank,

N.A., to fund Lexiam's acquisition and operation of the Zen Austin Ranch, a restaurant and

bar located in The Colony, Texas. *See* Pl. MSJ App. [ECF # 19], Ex. 1; *see also* Def. MSJ

App. [ECF # 20] at 1-10. In connection with the Loan, Lexiam executed a promissory note

(the "Note") in the amount of $390,000.00, payable to Citibank. Pl. MSJ App., Ex. 1; *id.*, Ex.

4 at 2. *See also* Def. Ans. [ECF # 7] at 1, ¶ 8. Lexiam also executed a Commercial Security

1

Agreement ("Security Agreement"), granting Citibank a security interest in certain collateral located at the restaurant premises, including restaurant fixtures, equipment, and other personal property ("FFE"). Def. MSJ App. at 11-14. Defendants Christopher Claassen and Tanzeen Claassen (the "Guarantors") executed separate personal guarantees (the "Guarantees"), unconditionally guaranteeing payment of all amounts owing under the Note. Pl. MSJ App., Ex. 2; *see also* Def. Ans. at 1, ¶ 9. Approximately three and a half years later, on March 14, 2015, Citibank executed an Allonge to the Note, and an Assignment of Loan Documents, transferring its interest in the Note and the Guarantees to BB&T. *See* Pl. MSJ App., Ex. 3.

Lexiam defaulted on the Loan by failing to make required payments when due under the Note. *See* Def. Ans. at 1, ¶ 11 & 2, ¶¶ 14, 22. On July 8, 2015, BB&T provided written notice of the default to Defendants. *Id.* at 2, ¶ 12; *see also* Pl. MSJ App., Ex. 5-A. When none of the Defendants cured the default, BB&T filed this lawsuit asserting (1) a claim against Lexiam for breach of the Note and (2) a claim against the Guarantors for breach of guaranty. BB&T also sought an award of attorneys' fees under the terms of the Note and the Guarantees, as well as under Chapter 38 of the Texas Civil Practice & Remedies Code. Defendants filed an answer, in which they admitted Lexiam's default under the Note and the Guarantors' breach of the Guarantees. Def. Ans. at 2, ¶¶ 12, 14, 15, 17. Defendants asserted as a defense, however, that BB&T lacks standing to bring this lawsuit. *Id.* at 3, ¶ 32.

BB&T moves for summary judgment against Lexiam and the Guarantors to recover the entire indebtedness due under the Note and the Guarantees, including attorneys' fees. Defendants filed a joint response and a request for leave to take further discovery and defer

ruling on BB&T's Motion, which the Court denied. The issues have been fully briefed, and the Motion is now ripe for determination.

## Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine, if the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if its resolution could affect the outcome of the action. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co*., 340 F.3d 233, 235 (5th Cir. 2003). The substantive law determines which facts are material. *See Anderson*, 477 U.S. at 247.

A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of admissible evidence to support the nonmovant's claim. *See Duffy v. Leading Edge Prods., Inc*., 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the burden shifts to the nonmoving party to produce evidence or designate specific facts in the record showing the existence of a genuine issue for trial. *See Fordoche, Inc. v. Texaco, Inc*., 463 F.3d 388, 392 (5th Cir. 2006). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). The parties may satisfy their respective

3

burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

## Analysis

### Breach of the Note

To recover on its claim for breach of the Note, BB&T must prove: (1) the existence of the Note; (2) that the party sued signed the Note; (3) that BB&T is the legal owner and holder of the Note; and (4) what amount constitutes the outstanding balance due and owing on the Note. *See Truestar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.). Here, BB&T has produced a copy of the original Note in favor of Citibank, dated November 15, 2011, in the original principal amount of $390,000.00. Pl. Compl., Ex. 1; Pl. MSJ App., Ex. 1. Defendants admit that this Note is a valid and enforceable agreement, and that Guarantors signed the Note, on behalf of Lexiam. *See* Pl. MSJ App., Ex. 5-C, RFA #3; Def. Ans. at 2, ¶ 19.

The uncontroverted summary judgment evidence further establishes that BB&T is the legal owner and holder of the Note pursuant to the terms of the Allonge and the Assignment of Loan Documents, executed by Citibank in favor of BB&T, on March 20, 2015. Pl. MSJ App., Ex. 3. Although Defendants initially pled that BB&T lacks standing to bring this lawsuit because "it was not party to the loan documents," they appear to have abandoned this defense by failing to address the standing issue—or any of BB&T's evidence establishing standing—in their summary judgment response. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (claim deemed abandoned when party failed to pursue it beyond initial pleading). Even if Defendants had not abandoned their lack of standing defense, they would not prevail on the merits. The summary judgment evidence establishes that Citibank,

the original lender, assigned the Note and the Guarantees to BB&T, and there are no gaps in

the chain of title. This evidence is sufficient to establish BB&T's standing to bring the claims

asserted in this lawsuit. *See Dade v. Hoover*, 191 S.W.3d 886, 888 (Tex. App.—Dallas 2006,

pet. denied) (assignee of loan documents had standing to assert claim under promissory note

against borrower where evidence established that note was properly transferred to assignee).

Defendants further admit that Lexiam defaulted on the Note by failing to pay the

indebtedness when due. Def. Ans. at 1, ¶ 11 & 2, ¶¶ 14, 22. BB&T's uncontroverted

summary judgment evidence further establishes that, as of July 8, 2016, the outstanding

balance owing on the Loan, exclusive of attorneys' fees, was $322,439.18, comprised of

$295,565.14 in unpaid principal, $24,038.68 in unpaid interest at the Note rate of $47.21 per

day, through July 8, 2016, and $2,835.36 in miscellaneous recoverable fees. Pl. MSJ App.,

Ex. 4 at 3. Therefore, the Court finds that BB&T has satisfied the elements required to

recover on its claim for breach of the Note.

Breach of the Guarantees

To recover on its claim for breach of the Guarantees, BB&T must prove: (1) the

existence and ownership of each Guarantee; (2) performance of the terms of the underlying

contract by BB&T; (3) the occurrence of the conditions on which liability is based; and (4)

each Guarantor's failure or refusal to perform the promise. *See Gold's Gym Franchising LLC

v. Brewer*, 400 S.W.3d 156, 160 (Tex. App.—Dallas 2013, no pet.). As with the Note, BB&T

has produced a copy of the original Guarantees executed by Christopher Claassen and

Tanzeen Claassen. Pl. Compl., Ex. 2; Pl. MSJ App., Ex. 3; Def. Ans. at 1, ¶ 9. BB&T has

also produced uncontroverted summary judgment evidence establishing its ownership of the

Guarantees, pursuant to the terms of the Assignment of Loan Documents, executed by

Citibank in favor of BB&T, on March 20, 2015. Pl. MSJ App., Ex. 3.

Each Guarantee provides, in relevant part:

> Guarantor unconditionally guarantees payment to Lender of all
> amounts owing under the Note. This Guarantee remains in effect
> until the Note is paid in full. Guarantor must pay all amounts due
> under the Note when Lender makes written demand upon
> Guarantor. Lender is not required to seek payment from any other
> source before demanding payment from Guarantor.

*Id.* Defendants admit that BB&T performed all of its obligations under the Note. Def. Ans. at

2, ¶ 21. Defendants further admit that Lexiam defaulted under the Note, that such default

triggered Guarantors' obligations under the Guarantees, and that Guarantors failed to remedy

Lexiam's default after BB&T made a written demand on them for payment. *Id.* at 2, ¶¶ 15,

17, 25, 26. The Court therefore finds that BB&T has satisfied the elements required to

recover on its claim against Guarantors for breach of the Guarantees.

<u>Failure to Mitigate</u>

In their response to BB&T's summary judgment motion, Defendants argue that

BB&T ignored the availability of the FFE at the restaurant premises valued at $150,000.00,

and thus failed to mitigate its damages. Under Texas law, the doctrine of mitigation of

damages is an affirmative defense that "prevents a party from recovering for damages

resulting from a breach of contract that could be avoided by reasonable efforts on the part of

the plaintiff." *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 426

(Tex. 1995). Because a failure to mitigate damages is an affirmative defense, Defendants

have the burden of raising the issue in their pleadings. Fed. R. Civ. P. 8(c) (parties must

"affirmatively state any avoidance or affirmative defense" in their responsive pleadings).[1]
Defendants did not raise the issue of mitigation in their Answer. Therefore, the Court
determines that Defendants waived that defense. *Woodfield v. Bowman*, 193 F.3d 354, 362
(5th Cir. 1999).

Even if the Court were inclined to consider the unpled affirmative defense, BB&T's
alleged failure to mitigate its damages would not prevent summary judgment in BB&T's
favor. *See Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (a defendant's failure to
plead an affirmative defense may be excused so long as the affirmative defense is raised in
the trial court in a manner that does not result in unfair surprise). The Note provides:

> Lender may exercise any of its rights separately or together, as
> many times and in any order it chooses. Lender may delay or
> forgo enforcing any of its rights without giving up any of them.

Pl. MSJ App., Ex. 1 at 3, ¶ 9(D). The Guarantees similarly state that "Lender has no duty to
preserve or dispose of any Collateral." *Id.*, Ex. 2 at 2, ¶ 7. This language establishes that
BB&T had no obligation to take possession of the collateral or attempt to mitigate its
damages prior to exercising any other remedy.

The Note and the Guarantees also contain clear waiver provisions that prohibit
Defendants from avoiding liability based on a defense of failure to mitigate damages by not
proceeding against any collateral in the first instance.  Under paragraph 9(G) of the Note,
Lexiam "waives any defenses based upon any claim that Lender did not obtain any
guarantee; did not obtain, perfect, or maintain a lien upon Collateral; or did not obtain the

---

[1] It is well-established that "[f]ederal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 394 (5th Cir. 2003).

fair market value of Collateral at a sale." *Id.*, Ex. 1 at 3, ¶ 9(G). Each Guarantee also provides that the Guarantor waives any defense based upon any claim that "Lender impaired the collateral;" "did not dispose of any of the Collateral;" "did not conduct a commercially reasonable sale;" "did not obtain the fair market value of the Collateral;" and "did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor." *Id.*, Ex. 2 at 2, ¶ 6(C).

Defendants argue that these provisions of the Note and the Guarantees are "invalid, inapposite, and ambiguous" and, thus, are insufficient to overcome their failure to mitigate damages defense. The Court disagrees. The language of the Note and the Guarantees is clear and unambiguous, and plainly provides that Defendants waived their right to assert any defense based on BB&T's alleged failure to mitigate damages. Texas courts have given effect to similar language and held that allowing a party to choose to waive the defense of failure to mitigate damages does not violate public policy. *See, e.g., Sowell v. Intern'l Interests, LP*, 416 S.W.3d 593, 601 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Defendants further argue that the waiver provisions in the Loan documents do not apply to BB&T's efforts to recover against them for their breach because the provisions at issue were only intended to apply to an intentional decision by the Lender not to pursue its rights with respect to the collateral. According to Defendants, BB&T was negligent in failing to discover the existence of the FFE and in failing to pursue its remedies with respect to that collateral. The Court rejects this argument, because the Note and the Guarantees make clear that BB&T had no duty to take any action with respect to the collateral. In the absence of such a duty, BB&T could not have been negligent.

8

Payments by the Small Business Administration

Defendants also suggest summary judgment may be inappropriate because the Loan involved a "possible or probable SBA guaranty to the bank," upon which basis some payments might have been made that should be credited on the Note or Guarantees. However, Defendants offer no evidence that the Small Business Administration ("SBA") made a payment to BB&T. The Court previously denied Defendants' Rule 56 motion to defer ruling on BB&T's summary judgment motion until Defendants conducted discovery on possible SBA payments to BB&T. *See* Order [ECF # 24]. The Court found, among other things, that Defendants made a deliberate decision not to timely propound formal discovery on the topic of whether BB&T or its predecessor received any payments from the SBA. Defendants have thus failed to show that summary judgment is not appropriate on BB&T's claim against Lexiam for breach of the Note or its claim against Guarantors for breach of the Guarantees based on any possible SBA payment to BB&T.

Attorneys' Fees

Finally, BB&T argues that it is entitled to attorneys' fees pursuant to the terms of the Note and the Guarantees, and pursuant to Texas Civil Practice and Remedies Code § 38.001. Lexiam is liable for BB&T's reasonable attorneys' fees under paragraph 6(b) of the Note, which provides that the Lender, may "without notice and without Borrower's consent:"

> [i]ncur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and *reasonable attorney's fees and costs*. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance.

9

Pl. MSJ App., Ex. 1 at 2, ¶ 6(B) (emphasis added). As the assignee of the original Lender,

BB&T is entitled to enforce this provision against Lexiam.

The Guarantors are similarly liable for BB&T's attorneys' fees under paragraph 9(A)

of each Guarantee, which provides that "Guarantor promises to pay all expenses Lender

incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." *See

id.*, Ex. 2 at 2, ¶ 9(A). Guarantors are also liable for BB&T's attorneys' fees under Section

38.001 of the Texas Civil Practice and Remedies Code, which authorizes an award of

attorneys' fees "in addition to the amount of a valid claim" in a breach of contract case. *See

Tex. Civ. Prac. & Rem. Code § 38.001(8). To obtain an award of attorney's fees under

Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are

recoverable, and (2) recover damages. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430,

437 (Tex. 1995). "An award of attorneys' fees is mandatory for a party prevailing in a breach

of contract case." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003); *AMX

Enterprises, L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 516 (Tex. App.—Fort Worth

2009, no pet.). Because BB&T prevailed on its claim for breach of contract and recovered

damages, it is entitled to recover its attorneys' fees from Guarantors under Section 38.001.

*Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).

Additionally, Section 38.002 requires that the party seeking to recover its attorneys'

fees "must present the claim to the opposing party" and "payment for the just amount owed

must not have been tendered before the expiration of the 30th day after the claim is

presented." Tex. Civ. Prac. & Rem. Code § 38.002. The purpose of the presentment

requirement is to enable the debtor to promptly pay the claim and avoid liability for

10

attorneys' fees. *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 936 (Tex. 1983). Proof of presentment has been held to be a substantive prerequisite to the recovery of attorneys' fees under Section 38.001. *See Playboy Enter., Inc. v. Sanchez-Campuzano*, 561 F. App'x 306, 309 (5th Cir. Dec. 23, 2013). However, no particular form of presentment is required, and Texas courts have found informal written and oral demands sufficient. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). "All that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 387 (Tex. App.—Houston [1st Dist.] 2006, no pet.). On July 8, 2015, BB&T provided Defendants with written notice of the default on the Loan. Pl. MSJ App., Ex. 5-A. BB&T's notice of default referenced the Note, as well as the Guarantees, and satisfied the presentment requirement under Section 38.002. *See Playboy Enter.,* 561 F. App'x at 310 (holding that notice of default sent to defendant accomplished purpose of presentment as to claim against defendant, as well as guarantors, where guarantor liability was based on defendant's breach).

Section 38.001 authorizes an award of attorneys' fees only against an individual or a corporation; it does not permit recovery of attorneys' fees against a limited liability company. *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452 (Tex. App. —Houston [14th Dist.] 2016, pet. filed); *Hoffman v. L & M Arts* 2015 WL 1000838, at *8-9 (N.D. Tex. Mar. 6, 2015); *see also Greco v. Nat'l Football League*, 116 F.Supp.3d 744, 752 (N.D. Tex. 2015) (Lynn, J.) (concluding that the plain language and ordinary meaning of "individual or corporation," as used in Section 38.001, excludes an unincorporated association from liability for attorneys' fees). Therefore, Section 38.001 does not provide an additional basis

for BB&T to recover attorneys' fees from Lexiam, which is organized as a limited liability company.

BB&T supports its claim for attorneys' fees with the affidavit of one of the attorneys who handled this case, David Clem. Pl. MSJ App., Ex. 5. Clem asserts that BB&T incurred legal fees and costs in the amount of $32,095.72 in pursuit of this action through the filing of BB&T's summary judgment motion. Clem describes the type of work performed by BB&T's attorneys and legal professionals, their hourly rates, and the total fees and costs charged. Defendants did not refute any of this evidence with competent summary judgment evidence of their own. The Court has reviewed the materials BB&T submitted in support of its request for an award of attorneys' fees and finds that the amounts claimed are reasonable and that the work performed was necessary to prosecute this litigation. The Court declines to award any additional sum for attorneys' fees and expenses incurred after the date BB&T filed its summary judgment motion. BB&T has not adduced sufficient evidence of the amount of fees actually incurred since July 2016, when the motion was filed. BB&T's estimate of future expenses is too speculative to support an award of fees.

Defendants object that they lack the financial means to pay an award of attorneys' fees. However, Defendants' financial condition is not relevant to the Court's determination of whether an award of fees is required under the terms of the Note or the Guarantees, or pursuant to Section 38.001. Defendants also object that BB&T's fees are unreasonable because the bank failed to participate in good faith settlement negotiations early in this litigation. Defendants' assertions of unreasonable delay are not supported by an affidavit or any other evidence, nor is there any reasonable argument that BB&T was obligated to settle the case for less than the full amount it was owed. Therefore, based on the record before it,

the Court finds that the attorneys' fees sought by BB&T are reasonable and necessary and that BB&T is entitled to recover such fees in the amount of $32,095.72.

### Conclusion

BB&T's Motion for Summary Judgment [ECF # 18] is GRANTED. BB&T shall have and recover Judgment against Defendants Lexiam Enterprises, LLC, Christopher Claassen, and Tanzeen Claassen, jointly and severally, the following:

(1) Actual damages and prejudgment interest in the amount of $327,490.66, which amount is comprised of (a) $295,565.15 in unpaid principal; (b) $24,038.68 in accrued and unpaid interest, at the Note rate of $47.21 per day, through July 8, 2016; (c) an additional $5,051.47 in accrued and unpaid interest at the Note rate, from July 9, 2016 to October 24, 2016; and (d) $2,835.36 in miscellaneous recoverable fees;

(2) Post-judgment interest at the rate of $47.21 per day;

(3) Attorneys' fees and expenses in the amount of $32,095.72; and

(4) Costs of court.

**SO ORDERED**.

October 24, 2016.

BARBARA M. G. LYNN
CHIEF JUDGE